UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ NOV 2 6 2012 ★

BROOKLYN OFFICE

WILLIAM CORBITT,

    Plaintiff,

– against –

QUEENS HEALTH NETWORK,

    Defendant.

**MEMORANDUM, ORDER, AND JUDGMENT**

11-CV-3095

Table of Contents

I. Introduction ................................................................................................ 1
II. Facts and Procedural History..................................................................... 2
III. Law............................................................................................................ 5
   a. Summary Judgment Standard ............................................................. 5
   b. Race and Gender Discrimination ....................................................... 6
   c. Retaliation........................................................................................... 7
IV. Application of Law to Facts ..................................................................... 7
V. Conclusion................................................................................................ 10

## I. Introduction

Plaintiff, formerly a housekeeping aide at Queens Hospital Center, a part of the Queens Health Network, was disciplined and suspended over allegations of his sexual harassment of a fellow worker. He was later terminated because he stopped showing up for work. He claims he did not learn of his termination until two years after it happened, but he made virtually no inquiries to the hospital in the interim, nor did he ever appear to do his job.

Corbitt sues his employer for discrimination and retaliation on the basis of race and gender. Brought are claims under 42 U.SC. § 1981 and the New York State Human Rights Law

1

(NYSHRL), N.Y. Exec. Law § 290 *et seq.* *See generally* Verified Complaint, attached to Notice of Removal, No. 11-CV-3095, Jun. 28, 2011, ECF No. 1.

Defendant has moved for summary judgment. The motion is granted for the reasons set forth below.

## II. Facts and Procedural History

Plaintiff William Corbitt, an African-American male, began working for the defendant in November of 1993. Pl. Counterstatement of Facts Pursuant to Rule 56.1 ("Pl. 56.1 Ctrstmt.") ¶ 2.1, Aug. 16, 2012, ECF No. 17. He was a housekeeping aide at the Queens Hospital Center, a part of the Queens Health Network, which in turn is a part of the New York City Health and Hospitals Corporation. Answer ¶ 1, Aug. 12, 2011, ECF No. 5. Defendant terminated his employment on February 27, 2010. Pl. 56.1 Ctrstmt. ¶ 20.1.

Until March 22, 2008, Corbitt worked in the Radiation Oncology Department. *Id.* ¶ 5.1. That was where he met Denise Taylor, an employee of Mount Sinai Hospital who also worked in the department. Defendant's Rule 56.1 Statement ¶ 4 ("Def. 56.1 Stmt."), Aug. 17, 2012, ECF No. 20.

On March 18, 2008, Ms. Taylor complained to plaintiff's supervisor that Corbitt was sexually harassing her. Pl. 56.1 Ctrstmt. ¶ 11.4. She alleged that Corbitt had engaged in a pattern of behavior that included, among other things, making repeated advances, asking to buy her lunch, and leaving her love notes and cards. Def. 56.1 Stmt. ¶¶ 6-11. Although plaintiff disputes most of the allegations, *e.g.*, Pl. 56.1 Ctrstmt. ¶¶ 5-8, he admits giving Ms. Taylor a card; a handwritten note, including his phone number and asking her to call him if she wanted to get together; and football tickets. *Id.* ¶¶ 8.1, 10.1; Dep. of William Corbitt ("Corbitt Dep.") 9:23-10:11, Aug. 17, 2012, ECF No. 22-B. Because of Ms. Taylor's complaints, the supervisory staff

of the Housekeeping Office convened a meeting with the two employees. Pl. 56.1 Ctrstmt. ¶ 11.4. As a remedial measure, on March 22, 2008, he was transferred from the Radiation Oncology Department to the Emergency Room, where he had no interaction with Ms. Taylor until May 2008 *Id.* ¶¶ 11.8-11.10.

In May, the plaintiff saw Ms. Taylor hugging another co-worker in the hallway. *Id.* ¶ 11.11. Unprompted, he commented to the co-worker that Ms. Taylor had filed false charges against him and that was the reason for his transfer to the Emergency Room. *Id.* Ms. Taylor promptly filed another sexual harassment complaint against him. *Id.* ¶ 11.13. Although plaintiff claims he was not interviewed by anyone about the incident, he spoke with at least two supervisors the next day and requested a transfer because he felt his "reputation was being tarnished." *Id.* ¶ 11.14; *see* Pl. Mem. Of Law in Opp. to Def. Mot. for Summ. Judgment ("Pl. Mem.") at 5, Aug. 16, 2012, ECF No. 18. He then formally requested a transfer in writing and submitted the letter to the Chief Operating Officer of Queens Hospital. Pl. 56.1 Ctrstmt. ¶¶ 11.18-11.19.

On June 27, 2008, plaintiff was re-assigned to another building several hundred yards away from where Ms. Taylor worked; he was "happy" the defendant had granted his request for a transfer. Declaration of William Corbitt ("Corbitt Decl.") ¶ 29, Aug. 16, 2012, ECF No. 16; Pl. Mem. at 5. Shortly after, on July 2, 2008, the hospital suspended plaintiff for thirty days. Pl. Mem. at 5; Pl. 56.1 Ctrstmt. ¶¶ 17-17.6. It had concluded an investigation into another complaint made by Ms. Taylor for which it found probable cause of sexual harassment. Pl. 56.1 Ctrstmt. ¶ 17.3.

While suspended, plaintiff retained present counsel, who sent two letters to the defendant alleging reverse gender discrimination based on spurious harassment charges and requesting that it be involved in any disciplinary investigation. *Id.* ¶ 17.9-17.12. *See* Declaration of Steven A.

3

Morelli ("Morelli Decl.") Ex. F, Aug. 16, 2012, ECF No. 15. The defendant then convened a meeting with plaintiff and his counsel on August 22, 2008. Pl. Mem. at 6. One week later, all parties reached a settlement through which, among other things, plaintiff was granted medical leave for one year effective September 1, 2008. Pl. 56.1 Ctrstmt. ¶ 17.14. His prior suspension was re-categorized as authorized leave and he received backpay for that time. Verified Compl. ¶ 47.

Plaintiff decided to return to work on November 3, 2008, two months into his year of medical leave. Pl. 56.1 Ctrstmt. ¶ 18.1. When Ms. Taylor saw him in the hospital that day, she called the police. *Id.* ¶ 18.2; Def. 56.1 Stmt. ¶18. Corbitt was arrested and eventually pled guilty to disorderly conduct. Def. 56.1 Stmt. ¶ 18. Ms. Taylor received a two-year order of protection against him. *Id.*

After this incident, plaintiff never again showed up for work. Pl. 56.1 Ctrstmt. ¶ 18.5. He says he feared that he might be arrested again. *Id.* ¶ 18.7. On August 3rd, 2009, defendant's Office of Labor Relations sent plaintiff a letter outlining disciplinary charges and recommending his termination because of his failure to show up for work since November 2008 and the allegations of sexual harassment. *Id.* ¶ 19.14; Morelli Decl. Ex. L. Plaintiff claims neither he nor his counsel received this notice of charges or of the conference that preceded the charges because all documents were sent to the incorrect address. Pl. 56.1 Ctrstmt. ¶ 19.11-19.14. He was, however, represented by his union at the conference. *Id.* ¶ 19.14.

On January 12, 2010, an administrative hearing was held on the charge of his "absen[ce] without official leave since November 3, 2008." Declaration of Daniel Chiu ("Chiu Decl.") Ex. E at 2, Aug. 17, 2012, ECF No. 22. Plaintiff was again represented by his union representative but defaulted because he failed to contact his union. Chiu Decl. Ex. E at 2. *See* Transcript of Oral

4

Argument ("Arg. Tr.") 4:12-5:9, Nov. 14, 2012. The administrative law judge recommended termination of employment for "lengthy, unexplained absence." Chiu Decl. Ex. E at 3. In accordance with the administrative decision, defendant ended employment on February 17, 2010. Pl. Mem. at 8; Def. 56.1 Stmt. ¶ 20.

Plaintiff commenced the instant lawsuit in state court on June 3, 2011. Notice of Removal, Jun. 28, 2011, ECF No. 1. Defendant removed the case to federal court on June 28, 2011. *Id.*

### III. Law

#### a. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see, e.g.*, *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). Summary judgment is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255. Evidence offered or pointed to in order to demonstrate a genuine dispute regarding a material fact may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Vill. Of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see Del. & Hudson Ry. V. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue"). If the non-movant fails "to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on" an essential element of the claim, summary judgment is granted. *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992). *See e.g.*, *Anderson*, 477 U.S. at 248-49.

### b. Race and Gender Discrimination

Claims of discrimination under Section 1981 (race) and the NYSHRL (race and gender) are analyzed under the same Title VII burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See e.g.*, *Spiegel v. Schulman*, 604 F.3d 72, 80 (2d Cir. 2010); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000); *Chambers-English v. Unisys Corp.*, No. 05Civ.2976(DC), 2007 WL 256441, at *5 (S.D.N.Y. Jan. 31, 2007).

"Under this test, a plaintiff establishes a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." *Spiegel*, 604 F.3d at 80 (internal citation omitted). If the plaintiff is successful in making his *prima facie* case, "a presumption of discrimination arises, and the burden shifts to the defendant, who must proffer some legitimate nondiscriminatory reason for the adverse action." *Id.* "If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant 'will be entitled to summary judgment…unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)). The plaintiff has "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal citation omitted).

### c. Retaliation

Retaliation under Section 1981 and the NYSHRL are both analyzed under the same standards as a Title VII claim of retaliation. *E.g., Little v. Northeast Utilities Service Co.*, 299 Fed. Appx. 50, 52 (2d Cir. 2008) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455-57 (2008); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) ("We typically treat Title VII and NYHRL discrimination claims as analytically identical").

A *prima facie* case of retaliation requires that plaintiff show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted). If the plaintiff satisfies this burden, "[t]he defendant must…articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* The plaintiff must then show that "retaliation was a substantial reason for the adverse employment action." *Id.* "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

### IV. Application of Law to Facts

The essence of plaintiff's claims is that the hospital discriminated and retaliated against him, based on his race and gender, by crediting a colleague's allegedly spurious complaints; failing to adequately consider or investigate his version of events leading up to those complaints; suspending and otherwise disciplining him; causing him to be arrested; and terminating him without notice. *See* Pl. Mem. at 1-3. Summary judgment is granted to the defendant on all of plaintiff's causes of action. He has not shown that the hospital did anything wrong.

Plaintiff cannot make out a *prima facie* case of race or gender discrimination. None of the defendant's actions in any way give rise to an inference of such discrimination. The hospital took measures in each instance not to discriminate *against* him, but to protect against complaints of discrimination *by* him. Although plaintiff categorically asserts that the complainant's accusations are baseless, he does admit to unwanted romantic advances towards her, including buying Ms. Taylor a card, writing her a note with his phone number, asking to spend time with her, and giving her football tickets. Pl. Ctrstmt. ¶¶ 8.1, 10.1. The defendant's responsive measures in this context do not raise any inference of discrimination.

Even if plaintiff could establish a *prima facie* case, he has failed to rebut the defendant's legitimate nondiscriminatory reasons for its actions. The defendant disciplined, suspended, and terminated his employment based on multiple complaints of sexual harassment and his failure to show up to work after his arrest. His arrest, stemming from the same employee's call to the police, cannot be imputed to the defendant. Even if all of Ms. Taylor's allegations of sexual harassment turned out to be untrue, the hospital had a good faith and legitimate interest in acting the way it did to investigate and prevent potential discrimination in the workplace. Plaintiff has provided no evidence to demonstrate those interests were pretextual.

Plaintiff's retaliation claim also fails for similar reasons. As an initial matter, even while disciplining him, the defendant repeatedly provided plaintiff with relief he requested. The hospital consented to his request for a departmental transfer, a result he was "happy" with (Corbitt Decl. ¶ 29), re-classified his suspension as authorized leave, gave him backpay, and then allowed him to take a year of medical leave. No reasonable juror could conclude that the defendant retaliated against plaintiff when it reasonably accommodated him in each instance, despite the continuing harassment complaints.

8

Assuming without deciding that plaintiff engaged in "protected activity," he has also failed to show any causal connection between that activity and defendant's adverse employment actions. The evidence unequivocally indicates that defendant's actions did not depend in any way on plaintiff's protected activity. It disciplined him only when Ms. Taylor filed a harassment complaint. And it ultimately terminated him for his failure to show up for work. But, even if plaintiff could establish a *prima facie* case of retaliation, he has not rebutted the defendant's legitimate, non-retaliatory reasons for its disciplinary actions.

Plaintiff maintains that he did not learn of the disciplinary charges, the administrative hearing, or his termination until discovery in this lawsuit in February 2012. *Id.* ¶ 19.21. But he was represented by his union at both the disciplinary conference and the administrative hearing. Pl. 56.1 Ctrstmt. ¶ 19.14; Arg. Tr. 5:5-9. He also took no steps to vacate the administrative decision through an appeal or special proceeding. Arg. Tr. 6:4. Plaintiff claims he did not learn of his termination until two years after it happened. *Id.* 6:21-24. Yet, the undisputed fact is that plaintiff, represented by present counsel, stopped showing up for work after his arrest and release on November 3, 2008. *Id.* 9:18-22, 10:6-7. And, with the exception of one letter sent to the defendant in December 2008, stating that he "would like to return to work" but was "afraid" of another arrest, neither plaintiff nor his counsel ever again contacted the defendant about continuing with his job. *See* Pl. 56.1 Ctrstmt. ¶ 18.7. The hospital cannot be charged with any wrongdoing because of plaintiff's fear of arrest. He sat on his rights, if any, for two years with no justification. *See* Arg. Tr. 13:4-11.

Defendant cannot be held liable for discrimination or retaliation. The complaint mentions in passing that defendant created a hostile work environment. There is no factual basis for that charge.

9

## V. Conclusion

Summary judgment is granted to the defendant on all of plaintiff's claims. The case is dismissed. No costs or disbursements are awarded.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: November 20, 2012
Brooklyn, New York